UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| EUGENE BIVENS, and DENISE BIVENS, his wife,<br><br>      Plaintiffs,<br><br>  v.<br><br>TAYLOR, WISEMAN & TAYLOR, ENVIRONMENTAL EVALUATION GROUP, INC., CONOCO PHILLIPS COMPANY, CONOCO PHILLIPS CORPORATION AND/OR CONOCO PHILLIPS, INC., EXXON MOBIL CORPORATION, and BNY WESTERN TRUST COMPANY,<br><br>      Defendants.<br>_____<br><br>TAYLOR, WISEMAN & TAYLOR, and ENVIRONMENTAL EVALUATION GROUP, INC.,<br><br>    Third-Party Plaintiffs,<br><br>  v.<br><br>THE HARTFORD FINANCIAL SERVICES GROUP, INC., WATERLINK, INC., CALGON CARBON CORPORATION, BARNEBEY SUTCLIFFE CORP., CONOCO PHILLIPS COMPANY, CONOCO PHILLIPS CORPORATION AND/OR CONOCO PHILLIPS, INC., HANDEX ENVIRONMENTAL RECOVERY, INC. AND/OR HANDEX CONSULTING & REMEDIATION, LLC, and THOMAS J. O'BEIRNE & COMPANY, INC.,<br><br>    Third-Party Defendants. | HONORABLE JOSEPH E. IRENAS<br><br>CIVIL ACTION NO. 06-CV-2780 (JEI)<br><br>**OPINION** |

1

**APPEARANCES:**

SEGAL LAW OFFICES, PC
By:  Alessandra L. O'Reilly, Esq.
135 West Market Street
West Chester, PA 19382-2901
     Counsel for Plaintiffs

THOMPSON BECKER & BOTHWELL, LLC
By:  John M. Becker, Esq.
     John H. King, Esq.
Ten Melrose Avenue
Woodcrest Pavilion
Suite 100
Cherry Hill, NJ 08003
     Counsel for Defendants/Third-Party Plaintiffs Taylor,
     Wiseman & Taylor and Environmental Evaluation Group, Inc.

MENDES & MOUNT, LLP
By:  John M. Deitch, Esq.
One Newark Center
19th Floor
Newark, NJ 07102
     Counsel for Defendant/Third-Party Defendant ConocoPhillips
     Company

WHITE & WILLIAMS, LLP
By:  Nicole L. Strauss, Esq.
     Robert G. Devine, Esq.
Liberty View
457 Haddonfield Road
Suite 400
Cherry Hill, NJ 08002
     Counsel for Third-Party Defendant The Hartford Financial
     Services Group, Inc.

MARKS, O'NEILL, O'BRIEN & COURTNEY, PC
By:  Michael A. Kosar, Esq.
Cooper River West
6981 N. Park Drive
Suite 300
Pennsauken, NJ 08110
     Counsel for Third-Party Defendant Thomas J. O'Beirne &
     Company, Inc.

**IRENAS**, Senior District Judge:

On March 5, 2004, Plaintiff Eugene Bivens ("Plaintiff")[1] was maintaining a carbon filtration vessel located in a shed when he tripped and fell into a hole, injuring his back. His sole allegation is that Defendants[2] acted negligently in allowing a dangerous condition to exist and in failing to warn of or repair the condition. (Compl. ¶ 12). The Court has jurisdiction pursuant to 28 U.S.C. § 1332. Venue is appropriate under 28 U.S.C. § 1391(a)(1).[3]

In its Amended Answer, Defendant ConocoPhillips Company ("Conoco")[4] filed a cross-claim against Defendants Taylor, Wiseman & Taylor ("TWT") and Environmental Evaluation Group, Inc.

---

[1] In Paragraph 15 of the Complaint, Plaintiff Denise Bivens alleges deprivation of the assistance, society, and consortium of Plaintiff Eugene Bivens due to Defendants' alleged negligence. Because her claims are not implicated in this motion, all references to "Plaintiff" herein will be to Eugene Bivens.

[2] By stipulation of dismissal dated July 25, 2006, Defendants BNY Western Trust Company and Exxon Mobile Corporation were dismissed without prejudice and thus terminated from the case. (Docket No. 28 and subsequent Docket entry).

[3] The action was transferred to this Court from the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1406(a) by Order of that court dated April 28, 2006.

[4] ConocoPhillips Company alleges that it is a successor to Tosco Corpation, which was improperly named as ConocoPhillips Corporation and ConocoPhillips, Inc. For purposes of this motion, all ConocoPhillips Defendants/Third-Party Defendants will be referred to as "Conoco."

("EEG")[5] seeking to compel TWT to defend and indemnify Conoco under an agreement between the parties.  TWT then filed a Third-Party Complaint against The Hartford Financial Services Group, Inc. ("Hartford"), Waterlink, Inc. ("Waterlink"), Calgon Carbon Corporation ("Calgon"), Barnebey Sutcliffe Corp. ("Barnebey"), Conoco, Handex Environmental Recovery, Inc. ("HER"), Handex Consulting & Remediation, LLC ("HCR"), and Thomas J. O'Beirne & Co., Inc. ("TJO").[6]

Count One of the Third-Party Complaint seeks a declaration regarding TWT's right of defense and indemnity under a Hartford insurance policy.  In Count Two, TWT seeks defense and indemnification under the master and subcontractor agreements with Waterlink, Calgon, and Barnebey arising out of their alleged negligence in failing to properly train and supervise Plaintiff.  TWT, in Count Three, seeks contractual defense and indemnification from TJO arising out of their contract to perform services.  Lastly, in Count Four, TWT seeks joint tortfeasor contribution or indemnification from HCR[7] as a result of HCR's

---

[5] Plaintiff states that EEG is a division of TWT.  (Pl. R. 56.1 Stat. ¶ 2).  It is clear from the record that EEG merged with TWT on January 1, 2004.  (Conoco Deitch Cert. Ex. E).  Accordingly, the Court will refer to both as "TWT."

[6] All references to the Third-Party Complaint are to Docket No. 53, the Second Amended Third-Party Complaint.

[7] Third-party Plaintiffs believe that HER reorganized to form HCR.  As this has no bearing on the outcome of the motions decided herein, we will refer to both as HCR.

design plans and specifications that allegedly called for pipes to emerge from the hole into which Plaintiff fell.

Before the Court are TWT's motion for summary judgment dismissing Plaintiff's Complaint, Conoco's motion for partial summary judgment on its cross-claim against TWT, and Hartford's motion to dismiss both TWT's Third-Party Complaint and the cross-claims of all parties for failure to state a claim. For the reasons set forth below, the Court will deny all of the motions.

## I.

On March 5, 2004, Plaintiff was injured on the property of a gas station owned by Conoco, located on Route 9 in Manalapan, New Jersey ("the site"). (Pl. R. 56.1 Stat. ¶¶ 1-2, 8). At that time, Conoco was in the process of remediating gasoline contamination at the site. (*Id.* ¶¶ 1-2). Conoco contracted with TWT to conduct testing and remediation of groundwater at the site pursuant to a Consulting Agreement. (Pl. Ex. B at 54:4-21). In order to accomplish this task, TWT maintained parts of a groundwater treatment system and soil vapor extraction system located inside a shed on the site. (Pl. R. 56.1 Stat. ¶ 3).

As part of the site remediation, TWT independently hired Barnebey to maintain a carbon filtration vessel that was part of the groundwater treatment system. (TWT R. 56.1 Stat. ¶ 2). At the time of the accident, Plaintiff and a co-worker, Timothy

5

Savage, both employees of Barnebey, were given the task of vacuuming and re-bedding the carbon tanks located in the shed. (Pl. R. 56.1 Stat. ¶¶ 1, 4). While Savage had been to the job site on previous occasions, this was Plaintiff's first time. (*Id.* ¶ 4). Prior to beginning work, Plaintiff and Savage met with a TWT technician, who unlocked the shed and reviewed the site's health and safety plan.[8] (*Id.* ¶¶ 5-6). According to TWT's former owner, Phillip Brilliant, TWT would keep the shed locked at all times except when work was being performed inside. (Pl. Ex. B at 120:3-13). He testified that a TWT technician was always on site when Barnebey employees vacuumed and re-bedded the carbon tanks and that the technician's role was to open the shed, go over the health and safety plan, and make sure that the job was completed. (*Id.* at 124:17-24).

Inside the shed, located near the carbon tanks, was a hole in the ground, created as part of a sub-slab ventilation system on the adjacent property.[9] (Pl. R. 56.1 Stat. ¶¶ 8-9). Arising out of the hole were two pipes. (*Id.* ¶ 9). Plaintiff testified that the TWT technician pointed out the hole, which Plaintiff was able to see, and had Plaintiff sign a safety form. (TWT Ex. B at

---

[8] The record does not provide details as to the content of the site's health and safety plan.

[9] Plaintiff alleges that TWT hired HCR and TJO to design and install, respectively, the sub-slab ventilation system. (Pl. R. 56.1 Stat. ¶¶ 11-15).

69:22-70:24; 87:24-88:2).  Once the TWT technician left, Plaintiff testified that he and Savage were left to their discretion as to how they vacuumed and re-bedded the carbon tanks.  (*Id.* at 174:8-23).

While performing the duties with the carbon tanks in the shed, Plaintiff stepped into the hole and was injured.  (Pl. R. 56.1 Stat. ¶ 8).  According to Plaintiff, Savage had placed a lid on top of a vessel in the shed.  When the lid began to fall, Plaintiff allegedly moved to catch it, despite the fact that he knew a hole was between himself and the vessel.  (TWT Ex. B at 84:6-11; 89:23-90:14).  In the act of trying to catch the lid, Plaintiff stepped into the hole.  (*Id.* at 93:12-24).

**II.**

"Under Rule 56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).

In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party.  *Pollock v. Am. Tel. & Tel. Long Lines*, 794

7

F.2d 860, 864 (3d Cir. 1986). "'With respect to an issue on which the nonmoving party bears the burden of proof, the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.'" *Conoshenti v. Pub. Serv. Elec. & Gas*, 364 F.3d 135, 145-46 (3d Cir. 2004) (quoting *Celotex*, 477 U.S. at 325). The role of the Court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

**III.**

TWT is the only Defendant moving for summary judgment as to Plaintiff's claim. While TWT independently seeks to have Plaintiff's entire Complaint dismissed, Plaintiff claims that *both* TWT and Conoco were negligent in this case.[10] Since Conoco has neither filed its own motion for summary judgment as to Plaintiff's claim nor joined TWT's motion for summary judgment, the Court will only decide whether there is a genuine issue of material fact as to the duty TWT owed to Plaintiff.

Plaintiff and TWT rely almost exclusively on *Wolczak v.*

---

[10] This may be the reason why, throughout their briefs, TWT and Plaintiff conflate the duty owed to Plaintiff by an absentee landowner, Conoco in this case, with that owed by a general contractor, TWT.

8

*National Electric Products Corp.*, 66 N.J. Super. 64 (App. Div. 1961). *Wolczak* involved injuries sustained by plaintiff, Anthony Wolczak, in erecting a monorail support structure. National Electric Products Corp. ("National") owned an industrial plant, which it wanted to equip with silver-plating tanks and a monorail. *Id.* at 68. To accomplish this, National hired a general contractor, Hanson-Van Winkle Munning Company ("Hanson"), to manufacture and furnish the tanks and monorail. *Id.* Hanson then hired Elbert Lively Company ("Lively") to erect the support structure of the monorail. *Id.* Wolczak was an employee of Lively.

In early February, 1957, steel tanks were delivered to National's plant and were installed by National's employees. *Id.* Later in February, Lively began installation of the monorail support structure, which ran directly above the tanks. *Id.* As work on the structure was concluding, plaintiff came on site to drill holes in an overhead beam that was part of the structure. *Id.* at 69. In the course of his work, plaintiff's drill jammed and "kicked," throwing plaintiff off of his ladder and into one of the tanks below. *Id.*

As a result of his injuries, Wolczak filed suit against both National and Hanson. *Id.* Plaintiff's negligence claim against Hanson was grounded in the latter's status as the general contractor, in charge of supervising all operations conducted at

9

National's plant at that time. *Id.* The trial court dismissed the complaint against Hanson. *Id.* at 70.

In affirming this part of the trial court's decision, the *Wolczak* court first noted that, ordinarily, a "general contractor is burdened with a duty similar to that owed by the landowner to business invitees, to exercise reasonable care to maintain the premises in a reasonably safe condition." *Id.* However, "[a]bsent control over the job location or direction of the manner in which the delegated tasks are carried out, the general contractor is not liable for injuries to employees of the subcontractor resulting from either the condition to the premises or the manner in which the work is performed." *Id.* at 71.

Here, TWT argues that it did not direct the manner in which Plaintiff vacuumed and re-bedded the carbon filtration vessels, thus entitling them to the limited immunity from liability provided to general contractors in *Wolczak*. Plaintiff argues that such immunity is not warranted because TWT exerted control over his work. He asserts that TWT's control is evident because a TWT technician had to be present to unlock the shed containing the carbon filtration vessels, discuss the site's health and safety plan prior to Plaintiff beginning work, and ensure that Plaintiff adequately performed his duties.

Regardless of which argument this Court may find more persuasive, *Wolczak* dealt only with the potential *vicarious*

10

*liability* of a general contractor. *See O'Keefe v. Sprout-Bauer, Inc.*, 970 F.2d 1244, 1250-51 (3d Cir. 1992); *see also Piro v. Pub. Serv. Elec. & Gas Co.*, 103 N.J. Super. 456, 463-64 (App. Div. 1968). Here, although the Complaint is not entirely clear, Plaintiff could be asserting that TWT should be held liable for negligence on a theory of vicarious liability *or on a theory of primary liability*. There can be little doubt that "a general contractor must . . . act in accordance with the traditional rules of tort law." *O'Keefe*, 970 F.2d at 1253; *see also Alloway v. Bradlees, Inc.*, 157 N.J. 221 (1999) (analyzing the existence of a general contractor's duty of reasonable care under "general negligence principles").

It is certainly possible that Plaintiff's contention is that TWT should be held liable on a theory of vicarious liability.[11] Conoco hired TWT as a general contractor, essentially charged with managing and overseeing the remediation of its property. TWT, in turn, hired various subcontractors to accomplish this task. These subcontractors included: HCR, alleged designer of

---

[11] Though not briefed by either party, it should be noted that New Jersey courts have cast doubt on the continued viability of *Wolczak*'s reasoning as applied to general contractors in some contexts due to the passage of the New Jersey Construction Safety Act ("CSA") and the Federal Occupational Safety and Health Act of 1970 ("OSHA"). *See O'Keefe*, 970 F.2d at 1253 n.12 (citing *Meder v. Resorts Int'l Hotel, Inc.*, 240 N.J. Super. 470 (App. Div. 1989); *Bortz v. Rammel*, 151 N.J. Super. 312 (App. Div. 1977)). However, because TWT's motion for summary judgment will be denied for other reasons, the Court does not need to address *Wolczak*'s potentially limited applicability.

the sub-slab ventilation system that required a hole in the shed; TJO, alleged installer of the sub-slab ventilation system and creator of the hole in the shed; and Plaintiff's employer, Barneby, maintainer of the carbon filtration vessels in the shed. Plaintiff could be seeking to hold TWT vicariously liable as a result of the negligent acts of any of these subcontractors.

However, it is just as plausible that Plaintiff is seeking to impose primary liability on TWT for TWT's own negligent acts. If that is Plaintiff's contention, *Wolczak*'s reasoning is inapposite. Plaintiff argues that TWT had exclusive control over the shed containing the carbon filtration vessels. Furthermore, because TWT controlled access to the shed, Plaintiff argues that it had to know of the open hole located inside. Plaintiff's deposition testimony, that the TWT technician on site pointed out the hole to Plaintiff prior to his beginning work, confirms this fact. As such, Plaintiff's Complaint could conceivably seek to hold TWT directly liable, e.g., for negligently failing to cover or take other appropriate precautions to ensure that Plaintiff would not be injured as he worked in the area around the hole.

Construing the facts in a light most favorable to Plaintiff, as the Court is required to do, there are two possible theories as to TWT's liability for negligence. Even if the Court found that TWT was entitled to a judgment as a matter of law on a theory of vicarious liability under *Wolczak*'s reasoning, there

would still remain issues of material fact as to TWT's potential direct liability for negligence.  This is because neither party has addressed such a theory in their arguments to the Court.  Therefore, TWT's motion for summary judgment will be denied.

**IV.**

The Court now turns to Conoco's motion for partial summary judgment to compel TWT to defend it against, and indemnify it for, Plaintiff's claim.  Conoco alleges that its Consulting Agreement with TWT for the remediation of gasoline contamination on its property is controlled by a contract dated September 22, 2003.  Specifically, Conoco references a subparagraph of the "Insurance and Indemnity" provision of the agreement, which states in pertinent part, "Contractor [TWT] shall indemnify, defend and hold Company [Conoco] . . . harmless from and against any and all claims [and] liabilities . . . ."  (Conoco Deitch Cert. Ex. D ¶ 20.4).  Based on this language, Conoco argues that it is entitled to defense and indemnification from TWT as a matter of law.

TWT alleges that the Consulting Agreement with Conoco is controlled by a contract dated December 10, 2000, between Tosco Marketing Company[12] and EEG, which as the Court previously noted

---

[12]  A division of Tosco Corporation, of which Conoco is a successor.

merged with TWT in 2004.  TWT asserts that there was an understanding at the time of the merger that all of EEG's active service agreements would be maintained and honored after the merger was complete.  According to TWT, it is this 2000 agreement that governs the remediation of Conoco's Manalapan property.  In arguing that there is no obligation for TWT to defend Conoco against Plaintiff's claim,[13] TWT contrasts two separate paragraphs under the "Indemnification" provision of the contract.  One, covering "damage to property or injury to persons," uses only the phrase "agrees to indemnify," whereas the other, covering patent infringement, says "agrees to *defend* [and] indemnify."  (TWT King Cert. Ex. A ¶ 15 (emphasis added)).

However, despite Conoco and TWT's arguments, both parties failed to provide the Court with important parts of the two contracts.  Conoco failed to provide the Court with a copy of the document detailing the "Scope of Work" under the 2003 contract, which the parties incorporated as "Exhibit A" of the agreement. (*See* Conoco Deitch Cert. Ex. D at 1).  Similarly, TWT has failed to provide the Court with the attachments to the 2000 agreement detailing the "Scope of Work."  (*See* TWT King Cert. Ex. A ¶ 3). Thus, there remains a genuine issue of material fact as to the most crucial aspect of whether TWT is obligated to defend Conoco

---

[13] TWT does not contest that it may be obligated to indemnify Conoco at a later date, depending on the ultimate resolution of Plaintiff's negligence claim.

against Plaintiff's claim and later indemnify it for any potential liability; that is, which contract governs the Consulting Agreement between the parties.  Without information about the work TWT agreed to perform for Conoco under the respective contracts, this Court must deny Conoco's motion for partial summary judgment.

### V.

Finally, the Court will decide Hartford's motion to dismiss TWT's Third-Party Complaint and the cross-claims of all parties for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  The Court first notes that Rule 12(b)(6) motions necessitate a ruling on the merits, "purely on the legal sufficiency of [third-party] plaintiff's case: even were [third-party] plaintiff to prove all its allegations, [it] would be unable to prevail."  *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).  "If the court considers matters outside the pleadings before it in a 12(b)(6) motion, the . . . procedure will automatically be converted into a Rule 56 summary judgment procedure. . . . [I]n addition to having all of [third-party] plaintiff's allegations taken as true, with all their favorable inferences, the trial court cannot grant a summary judgment unless there is no genuine issue of material fact."  *Id.*

Here, the parties rely on several matters outside of TWT's

15

Third-Party Complaint and the liability policy referenced therein.  In particular, in support of its arguments to the Court, Hartford submitted a copy of the allegedly controlling December 2000, Consulting Agreement between Conoco and TWT; answers to interrogatories; a copy of an additional liability policy issued by TWT's professional liability carrier, CNA; and a deposition transcript.  Based on the Court's consideration of the matters submitted by Hartford outside the Third-Party Complaint, Hartford's 12(b)(6) motion to dismiss will be converted to a motion for summary judgment.[14]

In its Third-Party Complaint, TWT claims that it is entitled to a right of defense and indemnification under a liability policy issued by Hartford.  Hartford's primary argument against such a right is that the policy explicitly excludes coverage for damages arising out of TWT's performance of "professional services."  Hartford points out specific language in the liability policy that excludes claims for "bodily injury" "due to the rendering of or failure to render any professional service."  It alleges that "engineering activities" are within the definition of a "professional service" and that TWT was conducting such activities when the hole in the shed was created as part of the adjacent property's sub-slab ventilation system.

---

[14] The legal standards for a motion for summary judgment discussed in Part II of this opinion will therefore apply.

TWT responds that Plaintiff has not alleged that TWT was negligent in its performance of "professional services." Rather, as the Court discussed in Part III above, Plaintiff can be construed as either alleging that TWT should be held vicariously liable for its role as the general contractor overseeing operations on site, or directly liable for its simple negligence in failing to take appropriate steps to protect Plaintiff from falling into an open hole.

Regardless of the theory upon which Plaintiff relies, this Court cannot hold as a matter of law that TWT was performing professional services that resulted in Plaintiff's bodily injuries. At this stage of the litigation, particularly given the relatively recent third-party claims brought by TWT against HCR and TJO for their respective roles in the design and installation of the sub-slab ventilation system, there clearly remains a genuine issue of material fact as to whether the liability policy's exclusion is applicable. It is unclear to the Court whether TWT performed professional services in the creation of the hole, whether HCR and TJO performed the engineering activities that would constitute professional services, or whether all three performed professional services. Accordingly, Hartford's motion for summary judgment will be denied.[15]

---

[15] Hartford presents no argument as to why the cross-claims of all parties should be dismissed. Presumably this is because Hartford believes that the Court would dismiss all cross-claims

17

**VI.**

For the reasons set forth above, the Court will deny TWT's motion for summary judgment dismissing Plaintiff's Complaint and Conoco's motion for partial summary judgment to compel TWT to defend and indemnify Conoco.  Hartford's motion to dismiss TWT's Third-Party Complaint and the cross-claims of all parties for failure to state a claim will be converted to a motion for summary judgment and will be denied.  The Court will issue an appropriate order.

Dated: September 5th, 2007

                                        s/ Joseph E. Irenas

                                        **JOSEPH E. IRENAS, S.U.S.D.J.**

---

as moot if its motion for summary judgment dismissing TWT's Third-Party Complaint were granted.  However, because the Court will deny Hartford's motion as to TWT, it will also deny Hartford's motion as to the cross-claims of all parties.